HARPER'S SMART SHOPS, INC.,
Respondent/Cross–Appellant,

v.

Bill L. BRUCE, et al., Appellants/Cross–
Respondents.

Nos. 62451, 62489.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 1994.

John Ernest Hilton, Clayton, for respondent/cross-appellant.

William Arnold Hellmich II, St. Louis, for appellants/cross-respondents.

CRAHAN, Judge.

Defendants, Bill Bruce and Woodsmill Management Company, appeal from an order of the Circuit Court of St. Louis County permanently enjoining their co-defendants, Mr. and Mrs. Chin Kim, from selling certain designated women's wear at the North Oaks Plaza Shopping Center in violation of an exclusivity clause in Plaintiff's lease. Plaintiff, Harper's Smart Shops, Inc. ("Harper's") cross-appeals on the ground that the trial court's order improperly restricts the scope of its exclusivity clause. We dismiss both the appeal and the cross-appeal.

In July, 1983, Harper's entered into a lease for space in the North Oaks Plaza Shopping Center ("North Oaks") to operate a women's clothing store. Harper's lease contained an exclusivity clause:

(a) Landlord agrees that Tenant may use the demised premises throughout the term hereof for the purposes of conducting therein the business of selling Men's, Women's, Misses', Children's and Infants ready to wear, lingerie, bras, girdles, gloves, purses, jewelry, handkerchiefs, scarves, hosiery, maternity clothes, millinery, shoes, and all other allied items customarily sold in stores selling such merchandise; and

(b) Landlord agrees that he will not permit the sale of women's or children's wear by any store in said shopping center other than those stores presently selling the same, without Lessee's written consent, which shall not be unreasonably withheld.

In March, 1987, Harper's lease was assigned to North Oaks Plaza Partnership ("NOP").

Defendants Bill Bruce and Woodsmill Management Company were the general partners of NOP.

In August, 1989, pursuant to the lease, NOP requested Harper's consent to three new proposed tenants: Kids Corner, McCrory's and Stephanies. Harper's consented to Kid's Corner but refused to consent to Stephanies or McCrory's. Nevertheless, NOP leased space to Stephanies and McCrory's and each opened its business in North Oaks. In November, 1989, Harper's filed suit seeking to enjoin and prohibit the operation of Stephanies and McCrory's. The court entered a Temporary Restraining Order ("TRO") enjoining, in some respects, the operation of both stores.

The following month, while the litigation over the sale of women's wear by Stephanies and McCrory's continued, Mr. and Mrs. Chin Kim entered into a lease for space in North Oaks for the operation of a retail establishment, The Fashion Place, that offered women's wear for sale. NOP intentionally did not notify Harper's of this new store or give them the opportunity to consent. Nor did NOP advise the Kims of the existence of the exclusivity clause in Harper's lease.

Harper's first learned of the Kims' intention to open the store on January 24, 1990. On that date, Harper's president verbally notified Mrs. Kim of the existence of the exclusivity clause in Harper's lease. Mr. Kim was notified by letter the next day. The Kims had no previous knowledge of the existence of the clause in Harper's lease. At the time the Kims were notified by Harper's, The Fashion Place's space was empty and no leasehold improvements had been made. Harper's amended its petition and added the Kims as defendants. The court entered a TRO restraining the Kims from offering for sale any women's or children's wear without Harper's consent.

On February 13, 1990, after a trial on the merits, the court issued a permanent injunction order enjoining the Kims and Stephanies[1] from selling certain designated women's wear and enjoining NOP from leasing space in North Oaks for the sale of such women's wear without Harper's written consent. The trial court also filed extensive findings of fact and conclusions explaining the rationale for its decision, including express findings regarding NOP's bad faith in the transactions at issue. Insofar as is pertinent to the issue NOP seeks to raise on appeal, the trial court found, *inter alia:*

... Based upon the evidence adduced, the Court finds that N.O.P. has exhibited bad faith in its dealings with not only Harper's, but also Stephanies and The Fashion Place. The evidence disclosed a number of examples of N.O.P.'s overreaching and bad faith.

. . . .

The Court finds N.O.P.'s actions in leasing space to The Fashion Place and Stephanies, without Harper's consent, to be not only in violation of its contractual obligations to Harper's, but also egregious and intolerable. The evidence disclosed that Plaintiff and the other Defendants were needlessly embroiled in this acrimonious and expensive litigation as a direct and sole result of N.O.P.'s actions.

... With respect to The Fashion Place, N.O.P.'s conduct is reprehensible. Mr. Gilb admitted, on cross-examination, that he had been instructed by N.O.P.'s general partner, Bill Bruce, *not* to inform Defendants Kim of the ongoing dispute with Harper's. Mr. Gilb carried-out Mr. Bruce's instructions despite the fact that both he and N.O.P. knew that Harper's would object to The Fashion Place and that it was inevitable that The Fashion Place would be drawn into this dispute. In short, the Court finds that, by its silence, N.O.P. intentionally duped Defendants Kim into executing a long term lease and opening its store in the hope that, by the time the Kims learned of the litigation and dispute, they would be committed to the Center.

In this same regard, N.O.P. intentionally did not inform Harper's or request its consent for the addition of The Fashion Place. Mr. Gilb testified that N.O.P. believed that a request for Harper's consent would be useless (presumably because they

1. Harper's had already dismissed its claim against McCrory's.

knew that Harper's would not consent). The Court believes and finds that N.O.P. failed to notify Harper's for another reason. If N.O.P. had timely notified Harper's of The Fashion Place, Harper's would then have had the opportunity to contact the Fashion Place and inform them of the ongoing dispute and litigation. Defendant Chin Kim testified and the Court finds that if Defendants Kim had been so notified, they would not have signed a lease with N.O.P. and expended the money and time to open their store. The Court believes and finds that N.O.P. well knew that this would occur and that N.O.P. intentionally failed to inform either Harper's or Defendants Kim because it knew that to do so would jeopardize the deal with the Kims. The Court finds this conduct reprehensible.

Defendants Kim contend that they had no knowledge of the situation and acted to their detriment before learning of the litigation. In particular, Defendants Kim had already signed their lease and expended some money in purchasing merchandise before learning of Harper's exclusivity clause. The Court empathizes with Defendants Kim's situation, but finds that Harper's did all that it possibly could, under the circumstances, to seasonably notify the Kims of the problem. Harper's notified Defendants Kim of its exclusivity claim immediately upon learning of the fact that The Fashion Place intended to open for business. At that time, The Fashion Place's space was empty and no leasehold improvements had been made. The Fashion Place voluntarily chose to go forward with its store. Any damages which the Fashion Place incurs as a result of this situation (including the costs of closing or moving its business as a result of this Order) are directly attributable to the actions of N.O.P. and the Court notes that Defendants Kim have a cause of action for recovery of such damages.

. . . .

### NOP's Appeal

■ NOP does not challenge any of the foregoing factual findings with regard to its bad faith and inequitable conduct. Nor does NOP challenge the trial court's order insofar as it restrains NOP from leasing space at North Oaks for the sale of certain designated women's wear without Harper's consent. Rather, in its sole point on appeal, NOP alleges error in restraining its co-defendants, the Kims, from selling designated women's wear at The Fashion Place.[2] The Kims are no longer parties to this appeal.[3] We find that NOP lacks standing to raise this issue on appeal.

The right of appeal is purely statutory and belongs only to a party "aggrieved" by a judgment. § 512.020 RSMo 1986; *Harris v. Union Electric Co.*, 685 S.W.2d 607, 611 (Mo. App.1985). "A party is 'aggrieved' when the judgment operates prejudicially and directly on his personal or property rights or interest and such is an immediate and not merely a possible remote consequence." *Id.* (citing *Hertz Corporation v. State Tax Commission*, 528 S.W.2d 952, 954[2] (Mo. banc 1975)).

As discussed in greater detail *infra*, neither NOP nor the Kims continue to occupy or to have any interest in North Oaks. Thus, the injunction barring the Kims from selling designated women's wear at North Oaks cannot possibly have any *direct* interest on NOP's individual property rights or interests.

NOP contends that it nevertheless has standing to appeal the injunction against the Kims because the Kims have brought an action against it for damages arising, in part, from the entry of the injunction against them. NOP reasons that if the trial court erred in enjoining the Kims, it would be entitled to raise such error in defense of the Kims' claims, apparently on the theory that the Kims' damages are the result of the trial court's error and not its actions.

We find such contentions insufficient to establish NOP's standing to appeal the injunction against the Kims. The potential impact of any ruling we might make on the Kims/NOP litigation is, on this record, re-

---

2. NOP does not complain of any error regarding the trial court's injunction as it pertains to Stephanies.

3. The Kims originally filed an appeal but later dismissed it.

mote and speculative. Further, to grant NOP the relief it is seeking would be inequitable in light of the trial court's findings of NOP's bad faith.

In its sole point on appeal, NOP cites authority from other jurisdictions for the proposition that injunctive relief is not proper where the lessee had no actual or constructive knowledge of an exclusivity clause at the time it entered into a lease. Whatever the merits of such a contention may be if advanced by a lessee, the undisputed findings of the trial court in this case establish that if the Kims lacked such knowledge, it was solely due to the "reprehensible," "intentional" and "bad faith" conduct of NOP. Therefore, to permit NOP to raise the issue of the Kims' knowledge so as to provide NOP with a possible defense to some of the Kims' claims would permit NOP to benefit from its own wrongdoing. Moreover, had the trial court denied the injunction against the Kims on the ground NOP advances on appeal, Harper's presumably would have been entitled to damages from NOP attributable to the Kims' sale of competing women's wear in violation of the exclusivity clause. Thus, NOP has already benefitted from the injunction against the Kims it now seeks to overturn. Under these circumstances, basic principles of equity compel the conclusion that NOP lacks standing to appeal the injunction against the Kims and its appeal must be dismissed.

### Harper's Cross–Appeal

■ Harper's cross-appeals on the ground that the trial court improperly restricted the scope of its exclusivity rights. Specifically, Harper's asserts that the trial court erred in limiting its permanent injunction to women's wear of specified sizes because the clear weight of the evidence showed that the contracting parties' intentions were to prohibit the sale of all women's wear, including junior sizes and the other items described in the exclusivity clause of Harper's lease. Harper's asks that we reverse the judgment and remand the cause to the trial court so that the order may be clarified to include women's ready-to-wear (of all sizes) as well all other items listed in the exclusivity clause of Harper's lease.

"If, pending an appeal, an event occurs which makes a determination of it unnecessary or renders it clearly impossible for the appellate court to grant effectual relief, the appeal or writ of error will be dismissed. Thus an appeal will be dismissed where, by reason of a change of conditions or circumstances the question has become moot," *Verity v. First City Drink, Inc.*, 800 S.W.2d 796, 797 (Mo.App.1990).

None of the parties restrained by the injunction now have any interest in North Oaks. On August 21, 1992, after this appeal was filed, NOP lost its ownership interest in North Oaks. The Kims have moved their business from North Oaks, established business elsewhere and have submitted an affidavit by Mr. Kim that they would not move back regardless of the outcome. Additionally, Stephanies no longer has an interest in North Oaks. Therefore, remanding the cause for clarification of the permanent injunction order would have no practical effect. Accordingly, this issue is moot and we must dismiss Harper's cross-appeal.

■ At oral argument, Harper's urged that the trial court's ruling with respect to the scope of its exclusivity clause is not moot because other stores and future landlords may seek to enforce the trial court's restrictive interpretation of the clause against Harper's in future litigation by invoking the doctrine of offensive collateral estoppel. Such concern is misplaced. To invoke that doctrine, anyone not a party to the case would be required to show that Harper's had a full and fair opportunity to litigate the scope of the clause in this case. *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979). That has not occurred because the matter became moot pending appeal. There is no one now before the court who has any direct interest in disputing Harper's contentions on appeal. Thus, we are deprived of the advocacy essential to the proper functioning of the appellate process. For the same reason, Harper's is foreclosed from obtaining a ruling on its contentions with respect to the proper scope of the exclusivity clause. Therefore, our dismissal of the appeal as moot also prevents non-parties from invoking the doctrine of offensive estoppel

with respect to the trial court's construction of the exclusivity clause.

For the foregoing reasons, we dismiss the appeal and cross-appeal. Costs are assessed against Appellants Bill Bruce and Woodsmill Management Company.

CRANE P.J., and KAROHL, J., concur.